IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

DAVID MAJESKI, MARY MAJESKI and
FAIR HOUSING PARTNERSHIP OF
GREATER PITTSBURGH, INC.,

       Plaintiffs,

v.

EDGETOWNE APARTMENTS UNIT
OWNERS ASSOCIATION,

       Defendant.

Case No.

Filed Electronically

**JURY TRIAL DEMANDED**

## COMPLAINT

### NATURE OF THE ACTION

1.    This is an action for declaratory judgment, permanent injunctive relief, and damages for discrimination on the basis of disability in the provision of housing. This action arises under the Fair Housing Act of 1968, as amended, 42 U.S.C. § 3601 et seq.

2.    Plaintiffs David Majeski and Mary Majeski (collectively "the Majeskis"), co-own a condominium in which they have lived since 1968. Defendant, the Edgetowne Apartments Unit Owners Association ("Edgetowne"), discriminated against the Majeskis by refusing to permit a reasonable accommodation and/or reasonable modification based on Mr. Majeski's disability.

3.    Over the course of nearly a year, Edgetowne denied the Majeskis' repeated and persistent requests to permit installation of a stairlift leading to the Majeskis' second-floor condominium. Mr. Majeski, who is disabled and in a wheelchair, has been unable to enter or exit his condominium without assistance since February 17, 2015. As a result, Mr. Majeski's health and quality of life have seriously deteriorated,

leading the Majeskis to seek the the assistance of Fair Housing Partnership of Greater Pittsburgh, Inc. with their request for a stairlift.

## PARTIES

4.      Plaintiff David Majeski is 70 years old and currently resides in Unit 5 in Building 203 of the Edgetowne Condominium complex, Coraopolis, Allegheny County, Pennsylvania. He co-owns Unit 5 with his wife. Mr. Majeski has used a wheelchair since 2015.

5.      Plaintiff Mary Majeski is Mr. Majeski's wife. She currently resides with Mr. Majeski in Unit 5 in Building 203 of the Edgetowne Condominium complex, Coraopolis, Allegheny County, Pennsylvania.

6.      Plaintiff Fair Housing Partnership of Greater Pittsburgh, Inc. (hereinafter "Fair Housing Partnership" or "FHP") is a non-profit corporation organized under the laws of the Commonwealth of Pennsylvania with its principal place of business at 2840 Liberty Avenue, Suite #205, Pittsburgh, Allegheny County, Pennsylvania.  FHP is dedicated to creating equal housing choices in Pennsylvania through fair housing advocacy and comprehensive housing counseling services. The FHP has as its board of directors a number of community leaders. The FHP engages in activities to identify barriers to fair housing in Pennsylvania and to help counteract and eliminate any such discriminatory housing practices. The FHP also takes steps necessary to protect the right of individuals to enjoy the benefits of living in an integrated community.

7.      Defendant Edgetowne Apartments Unit Owners Association is a Pennsylvania not-for-profit corporation with its principal place of business located at Apartment 6, Building 205, Edgetowne Apartments, Coraopolis, Allegheny County,

Pennsylvania, 15108.  Ronald Zaccardi serves as the president of Edgetowne Apartments Unit Owners Association.

## JURISDICTION AND VENUE

8. This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343(a)(4), 1367 and 42 U.S.C. § 3613.

9. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2) in that this is the judicial in which Defendant resides, and in which a substantial part of the acts and omissions giving rise to the claims occurred.

## FACTUAL BACKGROUND

**A. Purchase of Condominium and Initial Attempts to Install Stairlift**

10. In 1968, the Majeskis jointly purchased Unit 5 in Building 203 of the Edgetowne Condominium complex, located at 203 Coraopolis Road in Coraopolis, Pennsylvania.

11. Unit 5 is on the second floor of the Building 203, with one flight of stairs leading to the second floor. There is no elevator in the building.

12. Mr. Majeski has been diagnosed with cancer and diabetes. Due to complications from these diseases, Mr. Majeski has relied on a wheelchair since early 2015. Mr. Majeski receives dialysis three times per week, outside of the condominium.

13. The stairs in Building 203 make it impossible for Mr. Majeski to enter and leave his condominium on his own. He is, effectively, a captive in his own home, unable to come and go freely. Since February 17, 2015, the Majeskis have had to hire a private ambulance company to transport Mr. Majeski to and from his dialysis appointments by carrying him up and down the steps. This service costs $120 per round trip. In 2015, the

Majeskis spent $3,080.00 on ambulance transportation to Mr. Majeski's appointments. Between January 1, 2016 and June 10, 2016, the Majeskis have spent an additional $4,740.00 on these transport services.

14. A stairlift would eliminate the Majeskis' transportation expenses and improve their quality of life, as it would make it possible for Mr. Majeski to go up and down the steps of his building without assistance. Mrs. Majeski could then drive her husband to and from his dialysis appointments.

15. At approximately the time that Mr. Majeski began using a wheelchair, Mrs. Majeski approached a private company to discuss the possibility of installing a stairlift in the stairway of their building. The company informed her that, according to its engineer, it would be possible to install a stairlift.

16. Offering to pay for the stairlift and its installation, the Majeskis asked Ronald Ziccardi, president of Edgetowne, if they would be permitted to install the stairlift in their building. Mr. Ziccardi told them that they would not be allowed to install the stairlift due to concerns about emergency workers being able to utilize the staircase.

17. Mr. Ziccardi also told Mrs. Majeski that the Edgetowne condominiums are not accessible, and that he had denied similar requests from other residents. Mr. Ziccardi expressed concern that if the Majeskis were permitted to install a stairlift, the owners association would have to accommodate other residents with similar disability-related needs saying, "If I do it for you, I have to do it for everyone."

18. In early 2016, Mrs. Majeski again asked Mr. Ziccardi for permission to install a stairlift in order to accommodate her husband's loss of mobility.  But Mr. Ziccardi again denied this request citing the need for fire and police workers to have

unobstructed access to the stairway. Even though Mrs. Majeski explained that she confirmed with an architect, as well as the township inspector responsible for approving stairlifts, that the stairlift would be approved for installation, her request was still refused.

**B. The Fair Housing Act Amendments and Intervention by FHP**

19. In 1988, Congress dramatically expanded the scope and coverage of the Fair Housing Act. Entitled the Fair Housing Amendments Act of 1988 ("FHAA"), the new law included prohibitions against discrimination on the basis of disability in the provision of housing. The Act specifically expanded the definition of "discrimination" to impose an affirmative obligation on property holders, including condominium associations, to grant residents' requests to make accommodations and modifications at the residents' expense that are reasonable and necessary to ensure their equal opportunity to use and enjoy a dwelling.

20. Congress passed the FHAA specifically to eliminate accessibility barriers that historically have operated to deny fair housing to disabled persons and isolate them from the community at large. By enacting these amendments, Congress made "a clear pronouncement of a national commitment to end the unnecessary exclusion of persons with handicaps from the American mainstream." H.R. Rep. No. 100-711 at 18 (June 17, 1988). Congress recognized that the overt refusal to rent or sell housing was only one of the many reasons disabled people could not find necessary housing; the denial of reasonable modifications and accommodations poses just as significant an obstacle. "Acts that have the effect of causing discrimination can be just as devastating as intentional discrimination." Id. at 25.

21.     Since the enactment of the 1988 amendments to the Fair Housing Act, scores of courts across the country have held that landlords, homeowners' associations, housing developers, and condominium associations violate the Fair Housing Act when they deny reasonable accommodations and/or reasonable modifications for persons with disabilities.

22.     Unable to get approval for the stairlift on their own, on April 6, 2016, the Majeskis contacted Fair Housing Partnership of Greater Pittsburgh, Inc. ("FHP"). FHP is a not-for-profit fair housing organization located in Pittsburgh, Pennsylvania. FHP advocates on behalf of individuals like the Majeskis who have been denied basic rights protected under the FHAA. FHP is knowledgeable about the obligations placed on housing providers to consider and accept accommodations and modifications that are reasonably necessary to allow a person to use and enjoy a dwelling. The Majeskis explained to FHP that Edgetowne had refused the request for a reasonable accommodation and/or reasonable modification to install a stairlift at their own expense.

23.     On April 6 of 2016, Mrs. Majeski attended a unit owners' association meeting. At the beginning of the meeting and in anticipation of the request for the stairlift, Mr. Ziccardi, a representative of the board of directors, announced "this is not an accessible community."

24.     Following the April 6 unit owners' association meeting, a representative of FHP suggested that the Majeskis write a letter to Edgetowne requesting a reasonable accommodation and/or reasonable modification in order to have a stairlift installed.

25. On April 11 the Majeskis sent letter by certified mail, explaining that Mr. Majeski needed the lift due to his disability and requesting permission to have it installed. The letter requested a reply within 14 days.

26. Neither Edgetowne nor any of its representatives responded to the letter from the Majeskis.

27. Edgetowne's repeated refusals to consider the Majeskis' requests for a reasonable accommodation and/or modification have caused the Majeskis substantial and continuing harm. The lengthy periods of time when Mr. Majeski has been confined to his condominium due to the absence of a stairlift have caused severe humiliation, embarrassment and emotional distress.

28. At all times relevant to the events described above, the representatives of Edgetowne who communicated with the Majeskis were acting within the scope of their employment as employees, agents, and/or representatives of Edgetowne. The acts described above were carried out: (a) at the direction of and with the consent, encouragement, knowledge, and ratification of the defendant; (b) under the defendant's authority, control, and supervision; and/or (c) within the scope of the representatives' employment.

29. As a direct and proximate result of defendant's actions, the Majeskis have suffered, and in the future will continue to suffer, economic loss, humiliation, embarrassment, and mental and emotional distress.

30. In addition, Edgetowne's continuing discriminatory actions have caused and are continuing to cause harm to FHP by, inter alia, interfering with the efforts and programs of FHP which are intended to bring about equality of opportunity in housing

and by forcing the FHP to devote scarce resources to identify and counteract Edgetowne's unlawful housing practices.

31. Through the actions of its employees, agents, and/or representatives described above, defendant acted intentionally, maliciously, and with willful, callous, wanton, and reckless disregard for plaintiffs' federally protected rights.

## FIRST CAUSE OF ACTION
### Fair Housing Act
### (42 U.S.C. Section 3604(f)(3)(A))

32. Plaintiffs re-allege and incorporate by reference the preceding paragraphs.

33. The foregoing actions of defendant constitutes a refusal to permit, at the expense of the Majeskis, reasonable modifications of existing premises occupied or to be occupied by the Majeskis when such modifications may be necessary to afford such person full enjoyment of the premises, in violation of 42 U.S.C. §§ 3604(f)(2), 3604(f)(3)(A).

## SECOND CAUSE OF ACTION
### Fair Housing Act
### (42 U.S.C. Section 3604(f)(3)(B))

34. Plaintiffs re-allege and incorporate by reference the preceding paragraphs.

35. The foregoing actions of defendants constitute a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling, in violation of 42 U.S.C. §§ 3604(f)(2), 3604(f)(3)(B).

## DEMAND FOR JURY TRIAL

36. Pursuant to Fed. R. Civ. P. 38(b), the plaintiffs demand a trial by jury of all issues so triable as of right.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray that the Court grant them the following relief:

(1)  Enter a declaratory judgment finding that the foregoing actions of the defendant violate the Fair Housing Act, 42 U.S.C. § 3604 et seq.;

(2)  Enter a permanent injunction directing the defendant and its directors, officers, agents and employees to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and to prevent similar occurrences in the future;

(3)  Award compensatory damages to plaintiffs in an amount to be determined by the jury that would fully compensate plaintiffs for the economic loss, humiliation, embarrassment and emotional distress that has been caused by the conduct of the defendants alleged herein;

(4)  Award punitive damages to plaintiffs in an amount to be determined by the jury that would punish the defendant for the willful, wanton and reckless conduct alleged herein and that would effectively deter similar conduct in the future;

(5)  Award plaintiffs their reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 3613(c)(2); and

(6)  Order such other relief as this Court deems just and equitable.

Dated:  June 23, 2016                                       Respectfully Submitted,

*/s/ Carlos R. Diaz*
Carlos R. Diaz (PA 205177)
cdiaz@smalawgroup.com
**STEWART, MURRAY & ASSOC.**

**LAW GROUP, LLC**
437 Grant Street, Suite 600
Pittsburgh, PA 15219
Phone:  (412) 765-3345
Fax:  (412) 765-3346
www.smalawgroup.com